TRANSPORTES AEREOS DE ANGOLA, Plaintiff,

v.

RONAIR, INC., Jet Traders Investment Corporation d/b/a Commercial Air Transport Sales and Nigel Winfield, Defendants.

JET TRADERS INVESTMENT CORPORATION, Plaintiff,

v.

TEKAIR, LTD. and Ronair, Inc., Defendants.

Civ. A. Nos. 81–120–JLL, 79–363–JLL.

United States District Court, D. Delaware.

Feb. 4, 1985.

See also 89 F.R.D. 560.

F. Alton Tybout of Tybout, Redfearn, Casarino & Pell, Wilmington, Del., Michael B. Standard and Emily M. Bass of Rabinowitz, Boudin, Standard, Krinsky & Lieberman, New York City, of counsel, for plaintiff Transportes Aereos de Angola.

Allen M. Terrell, Jr. of Richards, Layton & Finger, Wilmington, Del., and Thomas E. Engel of Engel & Mulholland, New York City, of counsel, for defendants Ronair, Inc. and Tekair, Ltd.

Laurence I. Levinson, Wilmington, Del., for defendant Nigel Winfield.

## OPINION

LATCHUM, Senior District Judge.

The motions for sanctions now pending before this Court arise from a rare and prolonged situation where the contumacious conduct of two of the party litigants aided by a stream of attorneys who have appeared and disappeared in these actions have effectively brought this litigation to a dead standstill due to their deliberate refusal to abide by the provisions of the Federal Rules of Civil Procedure or to comply with numerous court orders. No judge, even one blessed with the patience of Job of the Old Testament, can overlook this obstinate behavior which has repeatedly occurred since the first action was filed on July 27, 1979.

## I. BACKGROUND FACTS

This litigation [1] is the result of a consolidation order entered on November 1, 1983, joining two essentially breach-of-contract

---

1. Jurisdiction of both cases exists by virtue of 28 U.S.C. § 1332(a) because the matter in controversy, exclusive of interest and costs, exceeds the sum of Ten Thousand Dollars and the parties are of diverse citizenship.

cases[2] involving Transportes Aereos de Angola ("TAAG"), a juridical entity of the Ministry of Transport of the People's Republic of Angola, Jet Traders Investment Corporation ("Jet Traders"), Nigel Winfield ("Winfield") as the president and chief executive officer of Jet Traders, Tekair, Ltd. ("Tekair") and Ronair, Inc. ("Ronair").[3]

On or about May 11, 1979, TAAG and Jet Traders entered into a written agreement pursuant to which Jet Traders agreed to sell and TAAG agreed to purchase, for a price of $7.5 million, a Boeing 707–320F aircraft, bearing manufacturer's serial number 19375 and United States registration mark N 473 RN, delivery to be made at Wilmington Airport in Wilmington, Delaware, on or before June 25, 1979. (Docket Item ["D.I."] 50, ¶ 9; D.I. 83, ¶ 9.)

On or about May 23, 1979, two other agreements concerning the subject aircraft were concluded. First, Ronair entered into a contract with Tekair, wherein Ronair agreed to sell and Tekair agreed to buy the subject aircraft for $4.98 million. Second, Tekair entered into an agreement with Jet Traders wherein Tekair agreed to sell the aircraft to Jet Traders for $6 million with delivery to take place by June 14, 1979. (D.I. 50, 56.)

Jet Traders paid $850,000 to Tekair in connection with the contract. Jet Traders also paid $160,000 to Litton Industries and World Airways, Inc., for avionics and conversion work to the aircraft. (C.A. 79–363, D.I. 31 at 3.) However, on or about July 20, 1979, Tekair repudiated the contract and notified Jet Traders that it was prepared to offer the aircraft for sale to others.[4]

TAAG paid $6.55 million to Jet Traders (D.I. 83 at 3), however, title to the aircraft, reposed in Ronair, never passed to Tekair or Jet Traders. (D.I. 50 at 4.) As a result, Jet Traders was unable to fulfill its contractual obligations to deliver the aircraft to TAAG. On or after June 26, 1979, TAAG notified Jet Traders in writing that it was terminating the contract and demanded a refund of the $6.55 million as well as consequential damages plus interest. Jet Traders refused to honor that demand.

In C.A. 79–363, Jet Traders alleged in its amended and supplemental complaint against Ronair and Tekair that Tekair breached its contract with Jet Traders because it failed to tender the aircraft and also alleged a conspiracy by Tekair and Ronair to defraud Jet Traders and illegally interfere with Jet Traders' contract to resell the aircraft to TAAG. (C.A. 79–363, D.I. 31 at 6.) Jet Traders seeks specific performance of the agreement (now moot) or, in the alternative, damages in the amount of $1,010,000. (Id. at 7.) In its answers, Ronair and Tekair alleged six affirmative defenses and a counterclaim stating that Jet Traders failed to comply with the letter of the agreement when Jet Traders refused to accept delivery of the aircraft and failed to pay the outstanding balance of the purchase price. (D.I. 35, 36.)

In C.A. 81–120, TAAG alleged that: (1) Ronair breached its contract with TAAG when it failed to deliver and transfer title to the aircraft; (2) Ronair is liable for conversion of the aircraft; (3) Ronair wrongfully interfered with and conspired to interfere with the performance of the

2. The two cases involved are Civil Action No. 79–363 ("C.A. 79–363") and Civil Action No. 81–120 ("C.A. 81–120"). For reference purposes, all docket items ("D.I.") will refer to C.A. 81–120 unless otherwise stated.

3. TAAG is organized under the laws of Angola with its principal place of business in Luanda, Angola. (D.I. 50.) Jet Traders is a Florida corporation with its principal place of business in Florida. (C.A. 79–363, D.I. 31.) Nigel Winfield is a citizen of Broward County, Florida. Tekair is a corporation incorporated under the laws of Switzerland and has its principal place

of business in Switzerland. (C.A. 79–363, D.I. 35 at 5.) Ronair is a corporation incorporated under the laws of the State of Delaware and has its principal place of business in the State of New York. (D.I. 50.)

4. Tekair alleges that it repudiated the agreement with Jet Traders only after "repeated and continuing breaches by Jet Traders of the Agreement including wrongful refusals to accept delivery and make payment of the balance of the purchase price . . . ." (C.A. 79–363, D.I. 35 at 2.)

purchase agreement between TAAG and Jet Traders; (4) Ronair fraudulently induced TAAG to enter into the purchase agreement when Ronair concealed the fact that the aircraft was subject to a chattel mortgage held by the Standard Chartered Bank of Switzerland in the amount of $4.72 million; (5) Ronair and Jet Traders conspired together to defraud TAAG; (6) Jet Traders and Winfield breached the agreement with TAAG when they failed to deliver the subject aircraft after they accepted $6.55 million as payment from TAAG; (7) Jet Traders and Winfield converted to their own use funds of TAAG in the amount of $6.55 million; (8) Jet Traders and Winfield wrongfully interfered with and conspired to interfere with the performance of the contract; and (9) Jet Traders and Winfield conducted and participated in enterprises involved in racketeering within the meaning of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 (Two Counts). (D.I. 50.) TAAG seeks a judgment against Ronair, Jet Traders and Winfield, jointly and severally, in the amount of $6.55 million plus interest and costs, and additionally, a judgment against Jet Traders and Winfield for $19,993,500 plus interest and costs. In its answer, Ronair sets forth twelve affirmative defenses and a cross-claim wherein it contends that it should be indemnified by Jet Traders or Winfield for any liability to TAAG arising out of the agreement. (D.I. 56.) In his answer, Winfield asserts fifteen affirmative defenses and a cross-claim for indemnity from Ronair and Tekair. (D.I. 91.) Finally, Jet Traders in its answer asserts eight affirmative defenses, four counterclaims and a cross-claim against Ronair and Tekair. (D.I. 83.)

On April 19, 1984, however, TAAG, having determined it had no valid claims against Ronair, moved to dismiss its complaint against Ronair with prejudice (D.I. 152) and the Court, after a hearing, granted TAAG's motion on May 7, 1984. (D.I. 169.)

## A. PROCEDURAL HISTORY

Although the Court is loathe to recount the distressing tale of procedural woe over a five-year period, the task, nevertheless, must be undertaken in order to demonstrate how impermissible litigation behavior can totally frustrate the efficient disposition of the legal issues in controversy.

On July 27, 1979, Jet Traders commenced C.A. 79–363 by summons, complaint, and *ex parte mesne* writ of foreign attachment (C.A. 79–363, D.I. 1–6), seeking to compel Tekair specifically to perform the agreement for the sale of a Boeing 707–320F aircraft, or to recover money damages in the event specific performance was not granted. On August 8, 1979, Jet Traders filed an amended and supplemental complaint (C.A. 79–363, D.I. 31) naming as defendants both Tekair and Ronair.

When Jet Traders originally filed its complaint, it was represented by Abrams, Anton, Robbins, Resnick, Schneider & Mager, P.A., of Hollywood, Florida ("Abrams, Anton firm"), as lead counsel and by Morris, James, Hitchens & Williams ("Morris, James firm") of Wilmington, Delaware, as local counsel. However, on September 9, 1980, the Morris, James firm moved to withdraw (C.A. 79–363, D.I. 90.) At the hearing held by the Court on the motion of counsel to withdraw, after granting the motion the Court warned: "Jet Traders is a corporation. It must be represented by counsel, and if counsel doesn't [comply] with our local rules ..., you can always move for a judgment against [it]." (C.A. 79–363, D.I. 101 at 32.)

On March 24, 1981, TAAG commenced C.A. 81–120 by summons and complaint (D.I. 1) naming as defendants Ronair and Jet Traders Investment Corp. d/b/a Commercial Air Transport Sales. TAAG sought recovery from both Ronair and Jet Traders of the $6.55 million it had paid to Jet Traders for the Boeing aircraft, Jet Traders having failed either to deliver the aircraft as required by its contract with TAAG or to refund any part of the purchase price. At that time, Jet Traders had been without local counsel in C.A. 79–363 for five months although it was still represented by the Abrams, Anton firm.

On April 20, 1981, Jet Traders moved for an extension of time to respond to the complaint in order to retain local counsel. (D.I. 6.) The motion was granted. In the absence of local counsel, on May 22, 1981, TAAG served on the Abrams, Anton firm, counsel for Jet Traders in Florida, a request for Jet Traders to admit certain facts. Jet Traders then moved to quash service of process and to dismiss the case for lack of personal jurisdiction. (D.I. 9.) Both motions were denied. (D.I. 46.)

On June 4, 1981, TAAG filed its first request for admission of facts from Jet Traders. (D.I. 10.) Also at this time, James Robb, Esq., of Wilmington, Delaware, filed his first notice of appearance as counsel for Jet Traders. Up to this point, Jet Traders had been without local counsel for nine months and the case was not yet two years old.

With respect to the issue of jurisdiction, TAAG filed, on July 13, 1981, requests for the production of documents directed to Jet Traders. (D.I. 13.) This request, to date, has not been fully satisfied. TAAG also filed its first notice to take the deposition of Jet Traders by its president, Winfield, scheduled for July 29, 1981. (D.I. 14.)

In response to TAAG's first set of sixteen requests for admissions from Jet Traders, on July 20, 1981, Jet Traders responded by admitting the facts set out in paragraphs 1–4 and 16 and by substantially admitting the facts set forth in paragraphs 5 and 6. (D.I. 18.) However, Jet Traders did not, and has failed to this date, to either admit or deny the facts set forth in requests 7–15, and has given no reason for its failure to respond thereto.

On July 22, 1981, Jet Traders moved for a protective order with respect to Winfield's July 29th deposition and the production of documents. (D.I. 20.) On July 28, 1981, after an agreement by counsel, Jet Traders withdrew its motion for a protective order. (D.I. 22.)

On August 3, 1981, TAAG filed a renotice of deposition of Jet Traders by its managing agent Winfield for August 25, 1981. (D.I. 23.) At that time, TAAG also renewed its July 13, 1981 request for the production of documents. (*Id.*) At Winfield's deposition on the issue of jurisdiction, Winfield testified that he had no documents which related either to the sale of the aircraft or to what business if any Winfield had done or tried to do at any time in the State of Delaware. (D.I. 28 at 9.) However, when Winfield was pressed on this issue by TAAG's counsel, Winfield admitted that he had documents relating to certain communications but that *he* (Winfield) *determined* that these documents were not "pertinent to this situation." (D.I. 28 at 14.) When pressed further Winfield admitted that he did employ legal counsel in Delaware in or about July 1979 to represent him in the sale and purchase of an aircraft. (*Id.* at 16.) During the deposition, requests were made for the production of the following documents: net income figures for Jet Traders for the calendar year 1979 (*id.* at 96); documents relating to the aggregate value of the assets and liabilities of Jet Traders and Winfield (*id.* at 94); a set of Jet Traders' minutes and corporate resolutions from the date of incorporation (*id.* at 118); personal and corporate telephone records (*id.* at 121–22); and all telexes sent or received by Jet Traders relating to transactions that are the subject of the litigation. (*Id.* at 128.) To date, Jet Traders and Winfield have failed to produce most of the requested items.

Robb, and members of the Abrams, Anton firm, continued to represent Jet Traders until June 1, 1982, when they moved to withdraw from representation of Jet Traders. (C.A. 79–363, D.I. 143–46.) Counsel for Jet Traders stated in their motion to withdraw that "Plaintiff (Jet Traders) has, by its conduct, rendered it unreasonably difficult for movant to effectively carry out its employment as counsel in this matter and has disregarded an agreement or obligation to movant as to expenses and fees in this matter." On October 29, 1982, this

Court, after a hearing, granted their motions to withdraw.[5] (D.I. 54.)

On August 18, 1982, this Court entered an order denying Ronair's motion to dismiss TAAG's claims for lack of standing and Jet Traders' motion to dismiss for lack of *in personam* jurisdiction. (D.I. 46.) On October 14, 1982, TAAG filed its first amended complaint in C.A. 81–120 naming as defendants Ronair, Jet Traders d/b/a Commercial Air Transport Sales, and Winfield personally (as controlling party of Jet Traders), and asserting certain additional causes of action against Winfield and Jet Traders. (D.I. 50.)

Both Jet Traders and Winfield failed to file answers to the first amended complaint and defaults were entered by the Clerk of the Court. (D.I. 59, 70.) On December 29, 1982, Robb entered for the second time his appearance on behalf of Jet Traders in C.A. 79–363 (D.I. 148) and C.A. 81–120 (D.I. 71.) Two weeks later, Jet Traders filed a motion to set aside the default alleging that:

1. Jet Traders was without funds to continue the services of James A. Robb, Esquire or to retain other counsel for purposes of filing an Answer to the First Amended Complaint due to a disagreement between the stockholders thereof which caused all moneys to be held by the Registry of the Court in the Circuit Court of the Seventeenth Judicial District in and for Broward County, Florida ("Florida Court") and caused a preliminary injunction to be entered by the Florida Court prohibiting Jet Traders from disposing of any of its assets.

2. As a result of such unavailability of funds, Jet Traders' repeated attempts to secure counsel were frustrated until December 23, 1982 when sufficient funds were released from the Florida Court to secure the services of James A. Robb, by which time a Default had already been entered by the Clerk on November 24, 1982.

(D.I. 73.)

Upon a closer review, however, of the "Agreed Order" entered in *Winfield & Jet Traders v. Furman,* the Florida Court action, it appears that attorney Robb was *not* authorized to withdraw sufficient funds to prosecute Jet Traders' claims but only authorized to expend funds for the limited purpose [6] of "attempting to have set aside that default judgment . . . ." (D.I. 73, Ex. B, ¶ d.)

On March 14, 1983, Winfield, represented by Shaffer and Davis of Rockville, Maryland,[7] and Robb as local counsel, filed a motion to set aside the default judgment. (D.I. 78.) Winfield alleged that the reason for his failure to respond to TAAG's first amended complaint filed October 14, 1982, was his inability to retain counsel from the date Robb withdrew, on October 29, 1982, until February 11, 1983. Winfield also alleged improper service of process (¶ 5) even though this Court had previously ruled that service was effected in compliance with 10 *Del.C.* § 3104.[8] (D.I. 62, 65.)

Orders were entered by this Court on March 25, 1983 and April 27, 1983, which set aside the default judgments against Jet Traders and Winfield. (D.I. 81.) In its Memorandum Opinion, the Court stated

---

**5.** This was the second and third time that counsel for either Jet Traders or Winfield had withdrawn from this case.

**6.** Jet Traders and Nigel Winfield were permitted to withdraw $5,000 from the Registry of the Court. Robb was entitled immediately to $1,450 due him for past fees and costs, the balance to be used for fees and costs in attempting to have the default judgment (in this Court) set aside. (D.I. 73.)

**7.** Winfield contacted Shaffer and Davis on November 22, 1982, to obtain legal representation. (D.I. 78 at 3.) However, negotiations continued

with Shaffer and Davis, through Jet Traders' Florida counsel Charles R. Burnett, Esq., and Karen Amlong, Esq., until an agreement was entered into on February 11, 1983. (*Id.* at 5.)

**8.** The affidavit of Shaffer and Davis submitted in support of the motion alleges that "on or about November 22, 1982, the Defendant Winfield contacted Charles Norman Shaffer, Esq., and requested that the firm of Shaffer and Davis provide legal representation on a number of matters, including, but not limited to, representing Jet Traders . . . ." However, Shaffer and Davis never entered an appearance for Jet Traders, but only for Winfield. (D.I. 78.)

that "[t]his is not an easy decision, for it requires the Court to balance the delinquency of the defendant, (Jet Traders and Winfield) something that should not be readily condoned, against the necessity of litigating the merits." (Citations omitted.) (D.I. 80 at 7.) The Court also noted that, at the hearing on this motion, "Mr. Robb, ... now assures the Court that he would remain Jet Traders' counsel, since they have secured funds for his services." (*Id.* at 2.)

Approximately two months after Robb made that representation to the Court, a stipulation was filed for the substitution of Jacob Balick,[9] Esq., of Balick & Yucht in Wilmington, Delaware, in place of Robb as local counsel for Winfield. During that time, Jet Traders had filed its answer to the first amended complaint. (D.I. 83.) Winfield filed his Answer to the first amended complaint and cross-claim against Ronair on May 11, 1983. (D.I. 91.) On June 6, 1983 and June 21, 1983, defendant Ronair filed its answer to cross-claims of Jet Traders (D.I. 100) and Winfield (D.I. 103).

On September 9, 1983, only seven months after entering the case, Shaffer and Davis moved to withdraw as counsel for Winfield.[10] (D.I. 107.) Shaffer and Davis alleged in its motion that:

Winfield, by his conduct, rendered it unreasonably difficult for the movant to effectively carry out its employment as counsel in this matter and has disregarded an agreement and/or obligation to movant as to expenses and fees in this matter.

2. That Defendant Winfield has refused to communicate with the movant, despite repeated attempts by the movant to contact Defendant Winfield by phone.

(*Id.* at 1.)

The Court held a hearing on October 31, 1983, to consider among other things, the Shaffer and Davis motion to withdraw. Winfield, who was present at the hearing, was personally [11] warned by the Court as follows:

Mr. Winfield, I want to tell you something. If Mr. Balick doesn't stay in and represent you ... I'm going to go on with this case whether you have an attorney or not ... and Jet Traders ... may go to default unless Mr. Robb stays on. Do you understand that?

To which Winfield replies, "Yes sir."

The Court continued:

Because there shall be no mistake about it. I'm not going to continue this case on and on with the lawyers in and out of it, and if Mr. Balick doesn't stay in, ... I'm not going to listen to you come back and say, I want an opportunity to hire another attorney. I want that clearly understood. Do you understand that?

To which Winfield replies, "Yes sir."

(D.I. 122 at 14.)

By order of November 1, 1983, the Court consolidated C.A. 79–363 and C.A. 81–120 for pretrial proceedings and for trial pursuant to Fed.R.Civ.P. 42(a). (D.I. 130.) A trial date of July 9, 1984, was set with discovery to be completed by June 1, 1984.[12] In addition, the Court granted the motion for leave to withdraw as counsel filed by Shaffer and Davis. (D.I. 119.) Also on November 1, 1983, TAAG served its first set of requests to produce documents on Winfield and Jet Traders. (D.I. 120.)

On November 17, 1983, after an involvement in the case of only seven months, attorney Balick filed a motion to withdraw as counsel for Winfield.[13] (D.I. 129.) In his motion Balick represented:

---

9. Balick became the fifth different counsel to enter an appearance for either Winfield or Jet Traders.

10. This is the fourth motion to withdraw filed in either C.A. 79–363 or C.A. 81–120 by one of the attorneys for either Winfield or Jet Traders.

11. This is the second warning given to either Winfield or Jet Traders.

12. This was the first time a trial date was set by the Court.

13. This was the fifth motion to withdraw filed by counsel for either Winfield or Jet Traders.

1. That defendant Nigel Winfield, by his conduct, has rendered it unreasonably difficult for movant to effectively carry out his employment as counsel in this matter and has disregarded his agreement and/or obligation to movant as to expenses and fees in this matter.

2. That defendant Nigel Winfield has refused to communicate with movant, despite repeated attempts by movant to contact defendant Nigel Winfield by telephone.

(D.I. 129.)

An Omnibus Order was entered by this Court on November 18, 1983 (D.I. 130) which: (1) denied Winfield's motion to dismiss the first amended complaint for insufficiency of process and insufficiency of service of process upon him; (2) denied Jet Traders' motion to dismiss C.A. 81–120 for failure to join Tekair as an indispensable party; and (3) granted TAAG's motion to declare that service of process made upon Winfield in C.A. 81–120 had been completed. The Court also confirmed the June 1, 1984 discovery cut-off date and the July 9, 1984 trial date. With reference to legal counsel for Jet Traders and Winfield, the Court made the following observations: [14]

These cases will proceed on the above pretrial schedule regardless of whether or not Jet Traders Investment Company and/or Nigel Winfield is represented by counsel and no additional time will be granted for the substitution of attorneys for these parties if such requests are made in the future.

*Reasons:* Both of these cases have been unduly delayed and frustrated by the continued change of attorneys or proceeding without attorneys by Jet Traders and Nigel Winfield ....

(D.I. 130 at 7.)

The Court then proceeded to enumerate the five periods of time during which Jet Traders had had three different law firms. In addition, Jet Traders had been without counsel two periods of time totaling eleven months. The Court also recited the three time periods during which Winfield has had three different law firms. At that point, the Court again warned Winfield of the consequences of changing or being without counsel by stating:

[W]hile this omnibus order was being drafted, Jacob Balick, Esq., (Winfield's current counsel) filed a motion to withdraw as defendant Winfield's attorney....

Defendant Winfield is *again warned* that if he is not to be represented by counsel, he will have to represent himself in C.A. No. 81–120. He also will be required to comply with the Federal Rules of Civil Procedure and the Local Rules of this Court or face a default. *These actions cannot be further delayed by such actions as recited above.*

(D.I. 130 at 9.) (Emphasis added.)

The Court, on December 6, 1983, held a hearing on Balick's motion to withdraw. At that time it was brought to the Court's attention that Winfield had obtained the services of Florida counsel Robert M. Leen, Esq., and in fact Leen, not Balick, had represented Winfield at his deposition during the week preceding the hearing on the Balick motion to withdraw. With respect to Winfield's deposition, counsel for defendant Ronair related the following:

When we got into the deposition, we had been, of course, under notice that Mr. Balick wished to withdraw ... and that Mr. Balick was, therefore, not supposed to appear in Florida.

We got to the deposition at 10:00 o'clock on Tuesday morning and waited until 11:05 on Tuesday morning for the appearance of Mr. Winfield. At 11:05 we were introduced to counsel, Mr. Leen, for the first time. It was at that time that the deposition commenced. It was thereafter suspended at 11:45 so that Mr. Leen could read the Complaint, that is, the First Amended Complaint. He had not read the Answer. So we suspended at 11:45 and resumed thereafter around 1:00 o'clock.

....

**14.** This is the third warning given by the Court to either Jet Traders or Winfield.

When I made my objections as plain as I could to Mr. Leen and Mr. Winfield about withdrawal that afternoon, it was stated to me for the first time so that I understood it that Mr. Leen was counsel only for purposes of the deposition in Florida. (D.I. 139 at 8–9.)

After listening to Leen explain his position vis-a-vis Winfield, the Court stated:

I am not going to let this kind of machination unduly delay the trial of this case ....

....

He (Winfield) has a right to represent himself *pro se* as an individual in this case. If he has no attorney here locally, then he will have to represent himself ....

The ultimate result ... if he persists in this type of activity ... could result in a default judgment ... for claims which are against him. And ... a dismissal of the claims which he has asserted .... That is the ultimate that the Court could do for compliance, and it is a severe measure.

I don't want to take that [action] until the Court has tried measures of less severity.[15]

(D.I. 139 at 21–22.) Additionally, the Court granted Balick's motion to withdraw from the case. (*Id.* at 25.)

During the deposition of Winfield in Florida, Leen stated that "some, if not all" of the records requested by TAAG had been impounded by the Circuit Court in Broward County, Florida, in the case of *Winfield v. Furman.* (C.A. 79–363, D.I. 320 at 479.) Leen also represented that this "impoundment" had prevented production of the documents to TAAG. Although Leen stated that it was his intention to make the documents available to TAAG, no copy of an "order" upon which Winfield based his claim was ever provided. (*Id.* at 485.)

On December 19, 1983, this Court entered an order authorizing TAAG to make application to the Florida Court for access to the documents in *Winfield v. Furman.* (D.I. 140.) The application was made in February of 1984, and a search for the documents ensued. Most of the documents were ultimately located at Alexander Grant & Co., accountants in Miami, Florida. The documents that were discovered there turned out to be neither coextensive with the documents TAAG had requested nor inaccessible to Winfield and his counsel, had they chosen to produce them. (D.I. 320 at 483.)

On April 23, 1984, Laurence Levinson, Esq., filed a Notice of Appearance on behalf of Winfield.[16] (D.I. 153.) The following day, the Court held a Rule 16 Scheduling and Management Conference at which the Court rescheduled the discovery cut-off date to September 4, 1984, and the trial date to October 9, 1984, because of Jet Traders' and Winfield's refusal to respond to discovery.[17] (D.I. 155.) On April 25, 1984, TAAG filed a motion for an order pursuant to Fed.R.Civ.P. 37 which sought: (1) to compel Jet Traders to make full production in response to TAAG's November 1, 1983 (D.I. 120) document production requests; (2) to impose sanctions against Winfield; (3) to preclude both Winfield and Jet Traders from introducing certain evidence at trial, including the testimony of Winfield himself regarding transactions which are the subject of paragraphs 71(1) and (2) of TAAG's first amended complaint;[18] and (4) to prevent Winfield from conveying, encumbering or transferring any assets and lending, transferring or disposing of any monies without prior notice to the Court. (D.I. 156.) Requests for admissions of fact addressed to Winfield and Jet Traders

---

**15.** This was the fifth warning given by the Court to either Jet Traders or Winfield.

**16.** Levinson is the sixth different attorney to enter an appearance on behalf of either Winfield or Jet Traders.

**17.** This was the second time a trial date was set by the Court.

**18.** These two paragraphs deal with monies ($114,500) TAAG accidentally paid in excess of the purchase price set by the two parties. (D.I. 50 at 16.)

which included a request for an admission as to the genuineness of certain documents filed by TAAG on May 2, 1984. (D.I. 164.) Similar requests for admission were filed by Tekair and Ronair. (D.I. 158–60.) On May 7, 1984, Jet Traders filed a Memorandum in opposition to TAAG's motion to compel production (D.I. 168), however, Jet Traders provided no further discovery. In the memorandum, Jet Traders asserted that "massive logistical problems" are the cause of the failure to produce documents, and that Jet Traders "is at a loss to know what documents were found and what documents were not found" among the *Furman* materials. (D.I. 168 at 2.) It also asserted that "Jet Traders stands willing to search for any documents not previously supplied to or obtained by TAAG which are not privileged" and further, to withdraw "its objections to all Interrogatory questions," save three. (*Id.* at 2.) Notwithstanding this offer, no further responses to interrogatories were ever received by TAAG, Ronair or Tekair.

This Court, on May 7, 1984, also granted TAAG's motion to dismiss with prejudice its claims against Ronair. (D.I. 169.) One week later, Winfield filed his response to TAAG's motion to compel production of documents. (D.I. 170.) In his response Winfield stated *inter alia:*

1. That the thrust of Plaintiff's motion is that Defendant, NIGEL WINFIELD, has purposefully and intentionally thwarted Plaintiff's discovery by failing to produce documents requested by Plaintiff's Notice to Produce filed on or about October 27, 1983.

2. That Defendant, NIGEL WINFIELD, concedes that he did not produce the requested documents within the time period proscribed by Federal Rules of Procedure; however, his failure to produce those documents was not intentional or motivated by a desire to impede Plaintiff's right to discovery. Rather, the documents requested were not in De-

fendant's, NIGEL WINFIELD'S actual possession or control, but instead *in custodia legis* in Case No. 80–19681 CD (Lee), *Nigel Winfield, et al v. Victor Furman, et al,* in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida.

3. That *at the commencement of his deposition* in Miami, on or about November 29, 1983, the Defendant, NIGEL WINFIELD, advised counsel for the Plaintiff that the requested documents could not be produced because of the order of impoundment by Judge Lee, but that he would have no objection to authorizing counsel for Plaintiff, or his designee, to inspect and photocopy these documents.

(D.I. 170 at 1–2.) (Emphasis added.) Winfield further represented that "none of the documents requested ... are in [his] possession" because they have been impounded in Florida proceedings other than the *Furman* case. (*Id.* at 3.)

On May 25, 1984, Jet Traders and Winfield filed their response to TAAG's requests for admission. (D.I. 174, 177.) In response to requests 1–9, Jet Traders and Winfield stated only "The information known or readily available to Defendant is insufficient to enable it to admit or deny, after reasonable inquiry." Requests 1–9 dealt mainly with financial records, bank balances and in one case, letters, *signed by Winfield,* as president of Jet Traders authorizing the release of $100,000 from the Jet Traders Investment Corporation Repurchase Agreement in the form of a cashier's check made payable to Jet Traders (D.I. 164, Exhibit D); another letter *signed by Winfield,* as president of Jet Traders authorizing the bank to deliver the proceeds from the $100,000 cashier's check to Clifton Winfield and a corporate action *signed by the only director of Jet Traders (Winfield)* which authorized the corporation to lend Winfield a sum in excess of $4.4 million.[19] (Exhibit F.)

---

**19.** The deposition of William Frank, Winfield's accountant and the accountant to the corporation during the periods relevant to this suit, was

taken on November 5, 1984. Although his deposition has not yet been filed with the Court, counsel for TAAG represented that Frank testi-

On June 12, 1984, TAAG served and filed its first set of interrogatories to Jet Traders and Winfield. (D.I. 181.) One week later TAAG filed its second set of requests for production upon Jet Traders and Winfield. (D.I. 184.) To date, Jet Traders and Winfield have not filed responses to either request.

On July 9, 1984, Winfield and Jet Traders filed a motion for a protective order relieving Winfield from appearing in compliance with the Notice of Deposition filed July 5, 1984, and scheduled for July 16, 1984 "due to family commitments." (D.I. 190.) On July 10, 1984, the Court heard arguments by counsel on TAAG's motion to compel production. From the bench, the Court ordered that Winfield's deposition would be taken on July 16, 1984, in Wilmington, Delaware, and that Jet Traders and Winfield were required to produce:

> [W]ithin 20 days all documents and answer all questions, interrogatories, requests for admissions .... If on the 20th day there has not been mutual agreement by the parties to continue it or an extension of time, that there be preclusion orders entered and that you (counsel for TAAG, Ronair & Tekair) file affidavits as to the expenses incurred for trying to get papers which you didn't find in Florida .... [20]

(C.A. 79–363, D.I. 222 at 64.)

Also, during this hearing Leen was admitted *pro hac vice* to represent Winfield in the present case.[21] On July 12, 1984, Winfield filed a response to TAAG's first request for production dated November 1, 1983. (D.I. 192.) However, the result of the response was that not one new document was produced. In his response to TAAG's request for production, Winfield for the most part stated that the documents sought were either: (1) impounded (D.I. 192 at ¶ 1); (2) *in custodia legis* (¶ 2); (3) not available to Winfield because he had "*no personal financial records*," (¶ 19); (4) previously provided by Jet Traders (¶ 11); or (5) in the possession of the Division of Pari-Mutuel Wagering in Florida (¶ 40.) (Emphasis added.) In response to TAAG's request # 19 for "any and all documents ... including ... bank statements ...," Winfield supplied only the names (no account numbers) of five banks in Florida. (D.I. 192 at ¶ 19.) However, at the show cause hearing on November 26, 1984, TAAG's counsel represented to this Court that "we have to date, and we are not by any means finished, we have discovered to date *75* separately numbered accounts through which Nigel Winfield transferred monies in the applicable period." (C.A. 79–363, D.I. 322 at 23.) (Emphasis added.)

This Court entered on July 18, 1984, an order memorializing the findings of the July 10, 1984 oral argument on TAAG's motion to compel. (C.A. 79–363, D.I. 221.) In that order, this Court reiterated *inter alia:*

> WHEREAS, the said defendants have not filed any answers in response to plaintiff TAAG's First Set of Interrogatories and Second Set of Requests to Produce,
>
> ....
>
> IT IS ORDERED:
>
> 1. *Production of Documents:* The materials and information described in Exhibit A attached hereto shall be produced by Nigel Winfield and Jet Traders Investment Corporation, d/b/a Commercial Air Transport Sales, collectively referred to hereinafter as "the Winfield defendants" and/or their counsel to TAAG on or before *August 22, 1984.* Failure to comply within the time herein provided, or to reach mutual agreement to extend the production ordered beyond August 22, 1984, shall result in the impo-

---

fied that "he was never asked by either Mr. Winfield or his attorneys to assist in the preparation of these responses to TAAG's Requests to Admit." He further testified that "he was never even shown plaintiff's requests." (C.A. 79–363, D.I. 312 at 15.)

20. This was the sixth warning given by the Court to either Winfield or Jet Traders.

21. Leen becomes the seventh different attorney to enter an appearance in this case for either Winfield or Jet Traders.

sition of sanctions, including but not limited to those hereinafter described.

. . . .

(b) At Nigel Winfield's deposition, he is to answer all questions put to him by counsel for all parties to this consolidated action. In the event that Nigel Winfield asserts a legal privilege not to answer any question put to him in whatever capacity or produce any document at the deposition, or such a privilege is interposed by counsel, Nigel Winfield and all the Winfield defendants and their counsel are directed to state the facts and circumstances that give rise to the assertion of privilege.

3. *Answers to Interrogatories:* Defendants Jet Traders Investment Corporation and Nigel Winfield are directed to answer *fully and forthrightly* plaintiff's First Set of Interrogatories and the interrogatories appended to the Reply Memorandum submitted in further support of Plaintiff's Motion to Compel at Exhibits A and B. (Docket Item ["D.I."] 179 in C.A. No. 81–120.)

4. *Requests For Admissions:* Defendants are directed to admit or deny the statements contained in Requests numbered 1–9 in plaintiff TAAG's Requests for Admission (dated April 30, 1984) and to state the factual basis for any denials they make.

5. *Sanctions:* In the event that the Winfield defendants fail to comply with any part of this Order, upon application by TAAG, Ronair or Tekair, this Court will order such sanctions as are just and appropriate under Rule .37(b)(2)(A) through (D), including, but not limited to, an order precluding the introduction of evidence not produced in response to discovery procedures. Further, upon a finding that such failure was not substantially justified, shall require the Winfield defendants, or any one or more of them, jointly and severally, as circumstances warrant, and the attorneys representing the Winfield defendants or any one or more of them, to pay the reasonable expenses, inclusive of attorneys' fees, caused by the failure.[22]

(C.A. 79–363, D.I. 221.) (Emphasis added.)

On August 13, 1984, Robb filed his second motion to withdraw as counsel for Jet Traders. (D.I. 209.) In support of that motion Robb again cites Jet Traders' failure to comply with its obligation as to expenses and fees.[23]

Pursuant to this Court's Order, document production took place at Leen's Florida office[24] on August 23, 1984. It was at

---

**22.** This was the seventh warning given by the Court.

**23.** This was the sixth motion to withdraw filed by counsel for either Winfield or Jet Traders, and the third separate motion to withdraw filed by Robb. (He withdrew once as counsel for Winfield.)

**24.** Counsel for TAAG, on August 20, 1984, telephoned counsel for Winfield (Leen and Levinson) and Jet Traders (Robb) to emphasize the need for production of specific documents on August 23 pursuant to this Court's July 18 Discovery Order. In order to memorialize these conversations, counsel for TAAG wrote to each of the defendants' three counsel and stated, *inter alia:*

(a) Laurence Levinson informed me that he has taken no action whatsoever to comply with the Order, it being his understanding that Mr. Robb had assumed full responsibility for the discovery aspects of the litigation;

(b) James Robb informed me that he has done nothing to comply with the Order beyond preparing a preliminary draft in response to some of the interrogatories, and that, since he is seeking to be relieved of his duties as counsel for Jet Traders Investment Corporation, he has no intention of completing those responses; he further informed me that he has made no effort to either secure or gather documents that he has been directed to produce; and finally,

(c) Robert Leen informed me that he hasn't made any efforts to prepare answers to interrogatories or requests to admit since these were Mr. Robb's responsibilities, and that the documents which he has gathered for production on August 23rd are essentially documents which plaintiff has already seen, i.e., the famed *"Furman* documents", and the general files of other Florida cases to which Nigel Winfield is a party. With one exception, he further indicated that he had not made any efforts to secure any of the tax, banking or other financial documents which plaintiff has requested.

(C.A. 79–363, D.I. 312, Ex. A at 3.)

this time that counsel for TAAG was informed by Leen that pursuant to a summons issued on July 16, 1984 (D.I. 228, Ex. A at 24), Winfield delivered fourteen cardboard boxes and five suitcases of documents (approximately 250,000 in number) which "may be germane to this case" to the Internal Revenue Service, "regarding an IRS investigation of Nigel Winfield to determine his income since 1977 ...." (D.I. 228, Ex. A at 31.)

On September 10, 1984, TAAG filed a request to enter property known as the Winfield Jet Center (D.I. 222), to review and inspect records that were encompassed by TAAG's October 27, 1983 request for production but not included in the materials delivered to the IRS. On September 25, 1984, this Court held a hearing in which it granted Robb's motion to withdraw as counsel for Jet Traders. (D.I. 223.) Also on September 25th, TAAG filed motions for various sanctions which include: (1) an order for interim counsel fees and expenses (D.I. 224); (2) an order for release of documents in custody of the IRS (D.I. 225); (3) an order precluding Winfield or Jet Traders from making certain objections to documents proffered by TAAG (D.I. 226); (4) an order that certain facts be deemed admitted and certain documents admissible (D.I. 227); and (5) an order imposing sanctions against Jet Traders and Winfield for their failure to answer interrogatories (D.I. 229). Finally, on September 25, 1984, Ronair and Tekair filed a motion for, *inter alia,* dismissal for failure to prosecute and for a default judgment. (D.I. 232.)

On October 1, 1984, Leen advised this Court by letter dated September 24, 1984, that he was withdrawing as counsel for Winfield.[25] (D.I. 234.) Winfield is now represented only by Levinson.

On October 6, 1984, counsel for TAAG sent a letter to Winfield and his counsel

reiterating their intention to inspect the Winfield Jet Center on October 11, 1984.[26] (C.A. 79–363, D.I. 312, Ex. D.) On October 11, 1984, counsel for TAAG appeared at the Winfield Jet Center. However, the Jet Center was locked and neither Winfield nor any of his or of his corporation's representatives were present. (C.A. 79–363, D.I. 322 at 26.) Counsel for TAAG was informed by a tenant of the premises that he (the tenant) had observed Winfield and others removing files from the premises over the preceding weeks and months. (*Id.*)

Although Winfield's deposition, pursuant to the July 18, 1984 Discovery Order, was to resume on September 10, 1984, by an agreement of counsel it was postponed until October 15, 1984. (C.A. 79–363, D.I. 312, Ex. B.) Because Winfield failed to appear on October 15, 1984, the deposition was rescheduled for October 22, 1984. (*Id.* at Ex. E.) Again, Winfield failed to appear even though counsel for Winfield informed TAAG that Winfield would be available for deposition the week of October 22, 1984. (*Id.* at Ex. F at 5.) Counsel for Winfield then indicated that his client would be available for the resumption of his deposition beginning November 12, 1984. (D.I. 242.) On October 18, 1984, Winfield filed a motion for a protective order staying his deposition until November 12, 1984, stating that he was a defendant in a civil action in Florida scheduled for a two-week trial beginning October 23, 1984. (*Id.*)

On October 22, 1984, TAAG moved to hold Winfield in contempt of court and for a unilateral extension of the discovery period. (D.I. 243.) Also on that date, this Court issued an "Order To Show Cause" to Winfield and Jet Traders to appear on November 26, 1984. (D.I. 248.)

In a letter dated November 7, 1984, counsel for TAAG scheduled the resumption of Winfield's deposition for November 14,

---

25. Leen becomes the seventh lawyer to withdraw from representing either Winfield or Jet Traders. Although Leen was counsel of record for only four months, he stated no reason for withdrawing.

26. Winfield and Jet Traders never responded to

1984.[27] On November 13, 1984, Winfield's counsel informed TAAG's attorney that Winfield did not intend to appear on November 14th because he contended that he did not have enough advance notice of the date and in addition, he would not appear until after the disposition of the pending motions scheduled for a hearing on November 26, 1984. (C.A. 79–363, D.I. 312, Ex. I.)

On November 26, 1984, this Court held a hearing on the show cause order. The first motion heard, however, was a motion made by counsel for Winfield (Winfield was present in the courtroom) for a continuance of the hearing because Winfield had allegedly retained an attorney from Florida [28] to represent him in this case and "he (the attorney) feels that at this time he is not ready to address properly the issues that are before the Court today." (C.A. 79–363, D.I. 322 at 4.) That motion was denied. (*Id.*) Next, the issue of the order to show cause was addressed by counsel for Winfield.[29] Without putting on any witnesses or introducing any evidence,[30] counsel for Winfield blamed the failure to comply with discovery rules on Winfield's "series of financial difficulties that have made it difficult for him to retain counsel ...." Levinson also stated:

> The interrogatories referred to in the motions were not answered. And Mr. Winfield, after speaking to him, asserts that it is not through his fault .... A series of financial setbacks, emotional setbacks, have caused Mr. Winfield to be unable to answer them (interrogatories). And the reason I say not him personally, but his attorneys did not comply with the

Order, they did not file the papers that were supposed to have been filed.

....

> He (Winfield) now has retained Mr. Gruzmark ... and I would like to represent to the Court that I have spoken to Mr. Gruzmark about the situation .... And he has assured me that if he enters into the case that he would stay with the case, no matter what. He will not withdraw.

(*Id.* at 5–12.) Later in the hearing, Gruzmark stated:

> The only purpose for my asking the right to approach the bench is to announce that I will file an appearance and ask for leave of Court to appear in this case with local counsel .... I never have appeared in a case and failed to stay with a case in my life, other than on one occasion, when I was permitted by the judge to withdraw.

(*Id.*, at 41–42.) The Court then stated that if Gruzmark intended to make an appearance on behalf of Winfield that Gruzmark make a formal application to be admitted *pro hac vice*.[31] To date, however, Gruzmark has made no such application.[32]

To summarize, the following motions are presently before this Court for disposition:

I. *TAAG's Motions*

 1. For an order awarding interim fees to and expenses for failure to comply with Rule 34, Fed.R.Civ.P. (C.A. 81–120, D.I. 224.)

 2. For an order directing release of documents in custody of the IRS to counsel for TAAG. (D.I. 225.)

TAAG's September 10, 1984 request to enter the premises.

**27.** TAAG chose November 14th to resume the deposition rather than the 12th because the 12th was a federal holiday and TAAG wanted to allow Winfield a day for travel. (C.A. 79–363, D.I. 322 at 28.)

**28.** Milton Gruzmark, Esq., of Miami, Florida, was seated at counsel table.

**29.** There was no appearance of counsel on behalf of Jet Traders.

**30.** Counsel for Winfield did introduce into evidence photocopies of the docket sheets in C.A. 79–363 and C.A. 81–120. (D.I. 322 at 10.)

**31.** Gruzmark would be the *eighth* attorney to enter the case for either Winfield or Jet Traders.

**32.** On November 27, 1984, the day after the hearing, counsel for Winfield advised TAAG that Winfield would be available for deposition beginning on December 10, 1984. TAAG, however, responded that it is not prepared to resume Winfield's deposition at that time in view of Winfield's failure to appear for the past three dates.

3. For an order precluding certain objections to documents proffered by TAAG. (D.I. 226.)

4. For an order that certain facts be deemed admitted and certain documents admissible. (D.I. 227.)

5. For an order imposing sanctions for failure to answer interrogatories. (D.I. 229.)

6. For an order holding Winfield and Jet Traders in contempt. (D.I. 243.)

7. For an order extending the discovery cut-off date. (D.I. 245.)

II. *Ronair's Motions*

1. For an order dismissing with prejudice Jet Traders' amended and supplemental complaint against Tekair and Ronair in C.A. No. 79–363 and Jet Traders' cross-claim against Ronair in C.A. No. 81–120. (D.I. 232.)

2. For an order directing the Clerk to enter a default for Tekair and Ronair on their counterclaims against Jet Traders in C.A. No. 79–363 by reason for its failure to appear by counsel.

3. For an order granting a court-ordered default judgment and inquest on damages.

4. For an order continuing the attachment bond posted by Jet Traders in C.A. No. 79–363 pending entry of final default judgment as to both liability and damages.

5. For an order granting Ronair and Tekair costs, disbursements and attorney's fees of this motion, as well as leave to apply at the inquest for, and to recover out of the attachment bond, other costs, disbursements, and attorney's fees incurred by Ronair and Tekair over the course of Civil Actions Nos. 79–363 and 81–120, incident to any claims asserted by or against Jet Traders.

6. For an order dismissing with prejudice the cross-claim of Winfield against Ronair in C.A. No. 81–120. (D.I. 249.)

## II. APPLICABLE LEGAL PRINCIPLES

According to the Federal Rules of Civil Procedure, the guidelines for discovery are based on the assumption that voluntary compliance with the rules by the parties is to be expected. Normally, the court will not be involved. If discovery, however, is to be effective, compulsion in the form of a Rule 37 sanction, must be available in case of necessity.

Pursuant to Rule 37, sanctions can be applied only for failure to comply with an order of the court. Where the discovery procedure is one which requires no prior court intervention, the party seeking discovery must first obtain a court order under Rule 37(a) requiring the recalcitrant party to make the discovery sought. This process is the only recourse available to a party seeking discovery through depositions, interrogatories, requests for production where there has been a response to the discovery request, but the response is inadequate or inappropriate. If the motion for an order compelling discovery is granted by the court, the recalcitrant party may be required, after an opportunity for a hearing, to pay the moving party "reasonable expenses incurred in obtaining the order, including attorney's fees, unless the court finds that the opposition to the motion was substantially justified or that other circumstances make an award of expenses unjust." Fed.R.Civ.P. 37(a)(4). Payment of these expenses is the only sanction available when the misconduct is limited to the "failure" enumerated in Rule 37(a).

If the court enters an order compelling discovery under Rule 37(a) and the order is disobeyed, the second step of the two-step process may be invoked under Rule 37(b). The range of sanctions under Rule 37(b) for noncompliance with an order to compel discovery includes:

1. An order designating matters or facts as established for purposes of the litigation. (Rule 37(b)(2)(A))

2. An order precluding a party from supporting or opposing certain claims or defenses. (Rule 37(b)(2)(B))

3. An order precluding the introduction of designated matters into evidence. (Rule 37(b)(2)(B))

4. An order striking pleadings or dismissing the action or rendering a default judgment. (Rule 37(b)(2)(C))

5. In lieu of or in addition to any of the foregoing, treating as a contempt any failure to obey any orders, except those to submit to a physical or mental examination. (Rule 37(b)(2)(D))

6. Any other such "orders in regard to the failure as are just." (Rule 37(b))

▆▆▆ The choice of the appropriate sanction generally is committed to the sound discretion of the district court. *Mangano v. American Radiator & Standard Sanitary Corp.*, 438 F.2d 1187 (3d Cir.1971). However, the court's discretion is not without bounds. Rule 37(b)(2) contains two standards—one general and one specific—that limit the district court's discretion. Any sanction must be "just," and the sanction must be specifically related to the particular "claim," which was at issue in the order to provide discovery. *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982). Finally, when the court does impose sanctions, it is important that the court articulate its reasons for its decisions. *Quality Prefabrication, Inc. v. Daniel J. Keating, Co.*, 675 F.2d 77, 78 (3d Cir.1982).

Bearing in mind that the Court must carefully tailor each sanction to fit the situation, the Court will now address the pending motions *seriatim*.

## III. TAAG'S MOTIONS

### 1. INTERIM FEES AND EXPENSES—FAILURE TO COMPLY WITH RULE 34

▆▆▆ TAAG contends that both Jet Traders and Winfield have flaunted their discovery obligations by engaging in a series of activities since the November 1, 1983 request for production of documents filed by TAAG, which were designed to thwart discovery. These activities included: (1) Robb's representation at the July 10, 1984

hearing on TAAG's motion to compel and for sanctions where he represented (as he had in December 1983 and May 1984) that Jet Traders would produce all documents responsive to the outstanding document production requests within 30 days; (2) the decision by Winfield to respond, sometime after July 18, 1984, to a summons served on him on June 22, 1984, by the Miami Office of the Criminal Division of the Internal Revenue Service, by delivering approximately 250,000 documents to the IRS prior to the August 23, 1984, date established by the July 18, 1984 order of this Court which required Winfield to produce all documents requested by TAAG; and (3) the August 23, 1984 production by Winfield of documents very few of which had not already been obtained by TAAG (the *Furman* documents). (D.I. 224.) At the show cause hearing, neither Winfield nor Jet Traders [33] introduced any evidence of the reasons why the events occurred in such a manner. In fact, the only explanation or argument proffered by Winfield with respect to any of the motions filed by either TAAG, Ronair or Tekair came from Levinson, Winfield's attorney. Levinson attempted to explain Winfield's failure to produce by stating:

> Discovery has been extensive. The production of documents, the document requests, the subpoenas for documents, for bank documents, are extensive in this case. The plaintiffs have received extensive documentation in this case.
>
> They complain that Mr. Winfield has not complied with the document production. He has attempted to comply with the document production, but has been unable, for various reasons, which are of record, and he has complied as much as he could with the document requests.

(C.A. 79–363, D.I. 322 at 10.)

This response is totally inadequate. The volume of materials delivered to the IRS, complicated by that agency's need to have exclusive access to those documents for a yet undetermined period of time, severely

---

**33.** At the show cause hearing, Jet Traders was not represented by counsel.

**500**

disables TAAG from obtaining the discovery contemplated by the Federal Rules and already ordered by this Court. As a result of Winfield's and Jet Traders' refusal to produce documents as ordered, TAAG is not in a position to meet any evidentiary objections requiring them to prove chain of custody, or the authenticity or genuineness of such documents. It does not have access to the "best evidence," nor could it produce, in many instances, an appropriate records custodian. The Court will not permit defendants to shift the burden of discovery by telling "plaintiff that, if he wishes, he may hunt through all the documents and find the information for himself." *Kozlowski v. Sears, Roebuck & Co.*, 73 F.R.D. 73, 76 (D.Mass.1979). While the Court is powerless to produce the documents to which TAAG is entitled, it does have the power to equitably redistribute the burden of time and expense placed upon it.

As a result of both Winfield's and Jet Traders' refusal to fully comply with this Court's July 18, 1984 Order compelling production of material and information (*see* C.A. 79–363, D.I. 221, Ex. A), this Court holds that Winfield shall reimburse TAAG for expenses and attorneys' fees incurred in obtaining the order in the amount of $102,681.72.[34] (*See* D.I. 228, 230.)

## 2. RELEASE OF DOCUMENTS IN CUSTODY OF IRS

█ This Court on July 18, 1984, ordered Winfield and Jet Traders to comply with all of TAAG's requests for production of documents on or before August 22, 1984. However, Winfield, pursuant to a summons issued by the IRS on June 22, 1984, delivered to the IRS approximately 250,000 documents on August 16, 1984. TAAG now argues that because many of the documents appear to be the subject of TAAG's request for production and that because the IRS has permitted the attorneys for TAAG to conduct an inventory inspection of those documents but will not release them for further inspection and analysis for an undetermined time required for its own review, that the IRS should notify the attorneys for TAAG at the completion of its review and to then deliver the documents to TAAG's attorneys for review and copying. (D.I. 225.)

Although Winfield waived any right to privacy by signing a release (D.I. 225, Ex. A), TAAG has failed to provide, and this Court has failed to discover, any authority which provides for the relief requested by TAAG. As a result, this motion will be denied.

## 3. PRECLUSION OF OBJECTIONS TO DOCUMENTS PROFFERED BY TAAG

█ TAAG next requests that this Court preclude Winfield and Jet Traders including any and all agents, attorneys or representatives from objecting to certain documents proffered by TAAG because Winfield and Jet Traders have promised to but have refused to produce them since November 1, 1983. On July 18, 1984, this Court ordered that certain documents (TAAG's first set of requests for production) be produced on or before August 22, 1984 (this date was changed by agreement of counsel). At the document production date of August 23, 1984, Leen, the attorney for Winfield, produced *only* three categories of

---

**34.** In support of its claim for attorneys' fees and expenses on September 25, 1984, TAAG submitted two affidavits. (D.I. 228, 230.) First, Sidney E. Connor of Connor Consultants, a firm of financial investigators engaged by TAAG's attorneys to perform investigative services, submitted an affidavit in which he stated the number of hours spent by his firm, the dates involved and any expenses incurred. (D.I. 228.) Next, TAAG submitted an affidavit of Michael B. Standard, a member of the firm of Rabinowitz, Boudin, Standard, Krinsky & Lieberman, P.C., attorneys for TAAG, in which he set forth in detail the number of hours expended by the attorneys for TAAG, dates involved, descriptions of work performed and an itemized list of expenses incurred. (D.I. 230.)

Neither Winfield, Jet Traders, nor anyone associated with them have filed affidavits or memoranda in opposition to this motion. (Robert Leen did file a motion opposing the imposition of fees and costs against him. D.I. 257.) Additionally, there has been no challenge to the accuracy of these affidavits.

documents: (1) the *"Furman"* documents; (2) the documents subpoenaed by the Florida Division of Pari-Mutuel Wagering; and (3) certain correspondence and telexes.[35]

As a result of Winfield's and Jet Traders' failure to fully comply with this Court's order of July 18, 1984, this Court will enter an order which precludes Winfield and Jet Traders from objecting to documents specified by this Court's order of July 18, 1984, or specifically requested at any deposition of Winfield taken in the course of this litigation on the grounds that: (1) it is not an original; (2) not an accurate, unaltered copy of an original; or (3) the party proffering the document cannot establish its chain of custody.

### 4. FACTS DEEMED ADMITTED AND DOCUMENTS DEEMED ADMISSIBLE

a. *Requests to Admit (May 2, 1984)*

■ On May 2, 1984, TAAG filed its second request for admissions to Winfield and Jet Traders. (D.I. 164.) On May 25, 1984, Jet Traders and Winfield filed responses wherein requests 1–9 were answered as follows:

"The information known or readily available to Defendant is insufficient to enable it to admit or deny, after reasonable inquiry."

On July 18, 1984, this Court entered an order following oral argument on TAAG's motion to compel discovery, directing Winfield and Jet Traders to "admit or deny the statements contained in Requests numbered 1–9 in plaintiff TAAG's Requests for Admission (dated April 30, 1984) *and to state the factual basis for any denials they make.*" (Emphasis added.) Although that order required compliance by August 22, 1984, no requests for extensions of time, no objections, no further admissions, denials or factual explanations have been filed.

At the November 26, 1984 show cause hearing, counsel for Winfield recited the same excuse that he used for Winfield's failure to answer the interrogatories, that is, that the failure to admit or give any factual basis for any denials was due to "a series of financial [and] emotional setbacks .... [I]t's through no fault of his own. Since he was represented, he depended on counsel at that time to answer, which they did not." (Jet Traders' answer to every other request save one [36] was simply "Denied." (C.A. 79–363, D.I. 322 at 7.)

The Court finds this bootstrap argument to be wholly without merit. Even assuming that there was a problem or several problems with his attorneys, which may have caused *some delay*, this does not excuse Winfield from compliance with this Court's July 18, 1984 order because Winfield has had legal representation since April 23, 1984. (D.I. 153.)

Therefore, pursuant to Fed.R.Civ.P. 37, this Court finds that each of the "Requests for Admission" propounded in TAAG's May 2, 1984 request will be deemed admitted for the purposes of this litigation.

b. *Request For Admission (June 4, 1981)*

■ Robb, in his capacity as attorney for Jet Traders, advised this Court by letter on July 10, 1981, that the parties had agreed that Jet Traders would treat items 1 through 6 and 16 of TAAG's first set of requests for admission as interrogatories, and defer replying to the remaining requests until after the Court ruled on Jet Traders' motion to dismiss for lack of jurisdiction. That motion was denied on August 18, 1982. Ultimately, requests numbers 1–4 and 16 were admitted, as was number 5 (with slight modification); number 6 was admitted with qualification. Requests numbers 7–15 have never been admitted, denied, objected to, or in any other way responded to.

---

**35.** Leen did offer permission to the attorney for TAAG to view the documents delivered to the IRS and to look through four filing cabinets of litigation files in Leen's office.

**36.** Jet Traders "admitted" request number 17.

Thus, this Court finds that each of the requests to admit propounded in TAAG's June 4, 1981 request for admission numbers 7 through 15 inclusive shall be deemed admitted for the purposes of this litigation.

### 5. FAILURE TO ANSWER INTERROGATORIES

■ In this Court's order of July 18, 1984, Jet Traders and Winfield were directed to answer "fully and forthrightly" TAAG's first set of interrogatories (D.I. 181) and the interrogatories appended to the reply memorandum submitted in further support of TAAG's motion to compel. (D.I. 179, Ex. A, B.) To date, both Jet Traders and Winfield have not done so. In addition, TAAG contends that Winfield has violated the order of July 18, 1984, by selling his personal residence in Fort Lauderdale, Florida, without advising counsel or the Court. (D.I. 229, Ex. A.) Because Winfield and Jet Traders have failed to comply with the July 18, 1984 order, the following sanctions pursuant to Fed.R. Civ.P. 37 are imposed.

1. That Winfield answer fully and completely at the next session of his deposition questions concerning:

 a. transfers of assets since 11/1/79;

 b. personal and corporate bank accounts;

 c. proposed transfers of property.

In addition, pursuant to TAAG's motion for sanctions for failure to answer interrogatories (D.I. 229), Jet Traders and Winfield are precluded from introducing evidence or testimony contrary to any factual statement presented in the motion with respect to: (1) a $660,000 additional payment by TAAG (D.I. 181, Interrogatory # 13); (2) the "unairworthiness" of D2–TAG, one of the aircraft referred to in this litigation (Interrogatory # 14); (3) any modification or alteration of the purchase agreement (Interrogatory # 16); (4) funds, assets or credit of Winfield to purchase aircraft (Interrogatories # 23–26); (5) written contract between Winfield and Western Airlines (Interrogatory # 3); and (6) any "checks" performed on the subject aircraft (Interrogatory # 8).

### 6. CONTEMPT—WINFIELD

TAAG argues that because Winfield has failed to appear for the resumption of the taking of his deposition and his insufficient cause for failing to appear, he should be held in contempt of Court and fined for each day that he continues to fail to appear for his deposition.

The tale of Winfield's deposition began innocently enough on October 25, 1983, when TAAG noticed the deposition of Winfield for 10:00 o'clock, November 29, 1983, in Florida. (D.I. 117.) Winfield's deposition began at 11:05 A.M., with Winfield being represented by Leen and Jet Traders was represented by Robb. Four days of depositions were held, ending on December 2, 1983, by Leen's request.[37] (C.A. 79–363, D.I. 320 at 607.) On December 6, 1983, TAAG moved to take Winfield's deposition in Delaware, and although the Court declined to move the deposition to Delaware, it did warn Winfield that "if there is continued obstruction in Florida, that it [the deposition] be conducted in Wilmington [Delaware]." (D.I. 139 at 21.) On July 5, 1984, Tekair and Ronair filed a notice to take Winfield's deposition on July 16, 1984. (D.I. 189.) On July 9, 1984, Jet Traders and Winfield filed a motion for a protective order to prevent the taking of Winfield's deposition because: (1) the deposition was scheduled for only 11 days from the date notice was served; and (2) "the deponent is unavailable on July 16, 1984 due to family commitments . . . ." (D.I. 190.) In its July 18, 1984 order, this Court required the deposition to resume on September 10, 1984 and continue from day to day until completed unless the parties otherwise mutually agreed. (C.A. 79–363, D.I. 221.) By mutual agreement, resumption of Winfield's deposition was postponed on September 6,

---

**37.** At the time the deposition was adjourned, TAAG had not completed its examination of Winfield and Tekair and Ronair had not even begun their examination, and only about five percent of the documents requested were produced by Jet Traders.

1984, to either October 1, 1984 or October 15, 1984, depending upon Winfield's attorney's schedule.[38]

On October 15, 1984, Winfield did not appear for his scheduled deposition. Resumption of the deposition was rescheduled for October 22, 1984 (Winfield's attorney represented to TAAG that Winfield would be available for deposition during the weeks of October 22 and October 29). On October 22nd, Winfield again failed to appear. Levinson then indicated that Winfield would be available on November 12, 1984. TAAG advised Levinson that Winfield's deposition would resume on November 14, 1984. (November 12th was a federal holiday.) On November 13, 1984, Levinson informed counsel for TAAG that Winfield had indicated that he would not appear on November 14th because he did not have enough advance notice and that, in any event, he would not appear until after the disposition of the motions to be argued before this Court on November 26, 1984. (C.A. 79–363, D.I. 312, Ex. I.)

At the November 26th hearing on the show cause order, Levinson without introducing any evidence stated the reasons for Winfield's failure to appear: (1) Winfield had to appear in a state court in Florida (October 15th date); (2) he had to appear in Federal Bankruptcy Court in Florida for a hearing that involved one of his tenants which owed him a great deal of money (October 22nd date); and (3) not enough notice (November 14th date). (C.A. 79–363, D.I. 322 at 8–9.)

Under Fed.R.Civ.P. 37(b)(2)(D), the Court can treat as contempt of court the failure to obey any orders. In this case, Winfield has demonstrated no intention of complying with this Court's order of July 18, 1984. No resumption of Winfield's deposition has occurred since that order was entered. Indeed, the deposition has been postponed because of Winfield, either directly or indirectly, four times since that July, 1984 order was entered. Winfield, without any

proof, contends that he has "reasons" why he has not attended his depositions. However, what Winfield has failed to realize is that unsupported excuses, either the day before the deposition is scheduled to take place or after the date, do not justify his failure to comply with this Court's order.

Civil contempt which is "wholly remedial" is intended to coerce compliance with a court order, to compensate for losses or damages caused by noncompliance (*McComb v. Jacksonville Paper Co.;* 336 U.S. 187, 191, 69 S.Ct. 497, 499, 93 L.Ed. 599 (1949)), or to benefit the complainant. *United States v. United Mine Workers,* 330 U.S. 258, 295, 67 S.Ct. 677, 696, 91 L.Ed. 884 (1947); *Universal Athletic Sales Co. v. Salkeld,* 511 F.2d 904, 910 (3d Cir. 1975). In the case for compensation, a fine may be imposed payable to the complainant, but it must be based upon evidence of the complainant's actual losses. *United Mine Workers,* 330 U.S. at 304, 67 S.Ct. at 701. In the case for coercion, the primary thrust of a coercive fine is to provide a disincentive to the recalcitrant party for continuing in its refusal or failure to comply with a court order. *McDonald's Corp. v. Victory Investments,* 727 F.2d 82 (3d Cir.1984). In *Latrobe Steel Co. v. United Steelworkers,* 545 F.2d 1336 (3d Cir.1976), the Court stated:

> Coercive sanctions ... look to the future and are designed to aid the plaintiff by bringing a defiant party into compliance with the court order or by assuring that a potentially contumacious party adheres to an injunction *by setting forth in advance the penalties the court will impose* if the party deviates from the path of obedience.

545 F.2d at 1344.

Because Winfield, in the past, has failed to realize the ramifications of his noncompliance, it is now up to this Court to insure that, in the future, he will comply with the orders of this Court or he will be fined a certain amount for each day of

---

**38.** The postponement was requested to enable TAAG to review the documents Winfield turned

over to the IRS in July and August of 1984.

noncompliance. Therefore, as a result of his past activities, Winfield is found to be in civil contempt of court. If Winfield fails to appear for, or fails to cooperate in, the scheduled resumption of his deposition, he *will be* fined $100.00 for each day that he does not appear for or cooperate in the taking of his deposition. Such fine shall be payable to the Clerk of this Court for the benefit of the United States.

## IV. RONAIR'S AND TEKAIR'S MOTIONS

### 1. DISMISSAL AND DEFAULT JUDGMENT—JET TRADERS

Ronair and Tekair have summarized their arguments in support of their various motions into three points.

First, because Winfield has made it clear that Jet Traders will not retain further counsel in these cases, and because Jet Traders, as a corporation, can only appear through counsel, its claims against Ronair and Tekair must be dismissed for failure to prosecute, pursuant to Fed.R.Civ.P. 41(b).

Second, without counsel, Jet Traders is unable to defend the claims asserted against it by Ronair and Tekair, and therefore the Court should enter a default on these claims.

Third, Ronair moves this Court for an order dismissing, with prejudice, Winfield's cross-claim against Ronair in C.A. 81–120 pursuant to Fed.R.Civ.P. 37(b) and (d), for failure to obey a court order requiring him to appear for deposition and awarding Ronair reasonable expenses, including attorneys' fees, caused by such failure and by Winfield's failure to admit, pursuant to Rule 37(c) and (d). (D.I. 233, 273.)

Although Jet Traders filed suit against Ronair and Tekair more than five years ago, it has made no significant effort to prosecute its claims against these defendants since the early stages of the litigation, when it was attempting to get possession of the Boeing Aircraft. On July 27, 1979, Jet Traders obtained an *ex parte mesne* writ of foreign attachment (C.A. 79–363, D.I. 4, 6), which this Court vacated by

order of August 6, 1979 (D.I. 13). On the following day, the Court denied Jet Traders' request for a temporary restraining order preventing Tekair from moving the Boeing Aircraft (C.A. 79–363, D.I. 21), finding that "money damages would be adequate to cover the damages incurred by [Jet Traders] if the Court should find that [Tekair] breached the sale contract on the aircraft." On August 8, 1979, Jet Traders requested and was granted an order of expedited discovery. (C.A. 79–363, D.I. 32 at 3, 28.)

Although Jet Traders pursued some discovery during the early years, the primary activity by it and Winfield since 1980, both in the Jet Traders' suit against Tekair and Ronair (C.A. 79–363) and in the TAAG action (C.A. 81–120), has been changes of counsel and various incidental motions. Since July, 1979, Jet Traders has been represented by four different counsel, all of whom have withdrawn from the case. Jet Traders has been without counsel for three periods totalling fourteen months.

 Rule 41(b), Federal Rules of Civil Procedure, provides that "for failure of the plaintiff to prosecute or to comply with these rules or any order of the court, a defendant may move for dismissal of an action or of any claim against him." Subsection (c) states that "The provisions of this rule apply to the dismissal of any counterclaim, cross-claim, or third-party claim." (*See also* Rule 5.2, Local Rules of Civil Practice for the United States District Court for the District of Delaware, permitting dismissal of a case "wherein no action has been taken for a period of three months.") The power to dismiss for failure to prosecute, which may be exercised with or without notice or opportunity to be heard, rests in the discretion of the trial court, and is part of its inherent authority "to prevent undue delays in the disposition of pending cases and to avoid congestion" in its docket. *Link v. Wabash Railroad Co.*, 370 U.S. 626, 629–30, 82 S.Ct. 1386, 1388, 8 L.Ed.2d 734 (1962); *Kenney v. California Tanker Co.*, 381 F.2d 775, 775 (3d Cir.1967), *cert. denied*, 390 U.S. 904, 88

S.Ct. 817, 19 L.Ed.2d 870 (1968); *Spering v. Texas Butadiene & Chemical Corp.*, 434 F.2d 677, 680 (3d Cir.1970), *cert. denied*, 404 U.S. 854, 92 S.Ct. 97, 30 L.Ed.2d 95 (1971) (affirming dismissal of action under former Local Rule 12 of this District, which provided for dismissal of cases "in which, without good reason, no action has been taken for a period of one year.") Such a dismissal will only be reversed upon a showing of abuse of discretion (*id.*), or in the case where dismissal is imposed as "punishment," a reason disapproved by the Supreme Court. *See Societe Internationale Pour Participations Industrielles Et Commerciales, S.A. v. Rogers*, 357 U.S. 197, 210, 78 S.Ct. 1087, 1094, 2 L.Ed.2d 1255 (1958).

██ Dismissal is considered a drastic sanction reserved for those situations where "there is a clear record of delay or contumacious conduct." *Donnelly v. Johns-Manville Sales Corp.*, 677 F.2d 339 (3d Cir.1982). Here the willful and contumacious behavior of Jet Traders is "mirrored in the record" not only by Jet Traders' dilatory pursuit of its claims;[39] by its intractable refusal to pay for or cooperate with its own attorneys; and by its cavalier and repeated disregard of Court orders requiring it to retain and appear by counsel, but, more particularly by the August 20, 1984 letter to the Court from Winfield, president and half-owner of Jet Traders, who stated that Jet Traders had no more money available for payment of counsel and that neither Winfield nor the estate of Jennings Crawford (the other 50% shareholder of Jet Traders) was willing to put up any money to pay for representation of Jet Traders. This is a voluntary admission by Jet Traders that it does not intend to proceed with discovery or prosecute its claims because a corporation can only appear through an attorney at law. *Simbraw, Inc. v. United States*, 367 F.2d 373, 374 (3d Cir.1966); *In re Victor Publishers, Inc.*, 545 F.2d 285, 286 (1st Cir.1976); *MacNeil v.*

*Hearst Corp.*, 160 F.Supp. 157, 159 (D.Del. 1958). Indeed, this Court has explicitly advised Jet Traders at least three times previously (including one occasion on which Winfield was present in the courtroom) that a corporation *must* be represented by counsel or have its claims dismissed. (C.A. 79–363, D.I. 96 at 32; C.A. 81–120, D.I. 122 at 14; D.I. 130 at 8, 9.) *Accord Shapiro, Bernstein & Co. v. Continental Record Co.*, 386 F.2d 426, 427 (2d Cir.1967) (granting default judgment against defendant corporation which had disregarded a District Court order to appoint counsel so that case could proceed to trial); *Colokathis v. Wentworth-Douglass Hospital*, 693 F.2d 7, 9–10 (1st Cir.1982), *cert. denied*, 461 U.S. 915, 103 S.Ct. 1894, 77 L.Ed.2d 284 (1983) (affirming dismissal for failure to prosecute where plaintiff's attorney had withdrawn on eve of trial and "the court had endured four and a half years of delay and confusion, contributed to by at least seven different attorneys for the plaintiff.")

It is also imperative that this Court consider whether or not lesser sanctions would "better serve the interest of justice." *Donnelly*, 677 F.2d at 342. In this case, the imposition of alternative sanctions such as contempt of court, fines, striking out pleadings or prohibiting the introduction of certain claims would not in any apparent way compel Jet Traders to provide or permit discovery or prosecute its claims against Ronair and Tekair. Jet Traders has already had a default entered and vacated in C.A. 81–120 because it failed to answer TAAG's first amended complaint. A contempt order or a fine would be of no benefit because Jet Traders refuses to allocate any funds to hire an attorney. To strike out parts of the pleadings or prohibit certain evidence would not "better serve the interests of justice" because Jet Traders, through Winfield, has made it clear that Jet Traders is not going to proceed. "Somewhere along the line, the rights of

---

**39.** There has been no activity by Jet Traders with respect to prosecuting its claims against Ronair and Tekair since July 9, 1984, when it moved for a protective order concerning Winfield's deposition. (C.A. 79–363, D.I. 217.) Jet Traders has been without counsel since September, 1984.

the defendants to be free from costly and harassing litigation must be considered." *Von Poppenheim v. Portland Boxing and Wrestling Comm'n*, 442 F.2d 1047, 1054 (9th Cir.1971), *cert. denied*, 404 U.S. 1039, 92 S.Ct. 715, 30 L.Ed.2d 731 (1972).

■ Having considered: (1) the totality of the circumstances which include numerous delays, dilatory tactics and the failure to provide for an attorney; (2) the willfulness of Jet Traders mirrored in the record; and (3) the feasibility of alternative sanctions, pursuant to Fed.R.Civ.P. 41(b), this Court will dismiss with prejudice Jet Traders' amended and supplemental complaint against Tekair and Ronair in C.A. 79–363 (D.I. 31), and Jet Traders' cross-claim against Ronair in C.A. 81–120 (D.I. 83).

## 2. DEFAULT FOR RONAIR AND TEKAIR ON COUNTERCLAIMS

Pursuant to Fed.R.Civ.P. 55(a), "[W]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter his default." [40]

■ For the same reasons that Ronair and Tekair are entitled to a dismissal of Jet Traders' claims against them for failure to prosecute, they are entitled to an entry of default on their counterclaims against Jet Traders in C.A. 79–363. According to Winfield's August 20, 1984 letter, Jet Traders will not be represented by counsel, therefore it will be unable not only to prosecute the claims it has previously asserted, but to defend the claims asserted against it. *Laskowitz v. Shellenberger*, 107 F.Supp. 397 (S.D.Cal.1952). Where a corporation fails to comply with a court order to retain counsel to defend itself, a claim against it cannot be brought to trial. *Shapiro, Bernstein & Co. v. Continental Record Co.*, 386 F.2d 426 (2d Cir.1967).

Over a year ago, the Court explicitly warned Winfield that "Jet Traders ... may go to default unless Mr. Robb stays in. Do you understand that?" Mr. Winfield responded, "Yes, sir." (D.I. 118 at 14.) Likewise, at a hearing on a motion to withdraw in C.A. 79–363 over three years earlier, the Court had cautioned that Jet Traders, as a corporation, "must be represented by counsel" and that if it failed to retain counsel, "you can always move for a judgment against them." (D.I. 96 at 32. *See also* D.I. 130 at 8, 9; D.I. 136 at 22.)

As a result of these repeated warnings, pursuant to Fed.R.Civ.P. 55(a), this Court will direct the Clerk of Court to enter a default in favor of Tekair and Ronair on their counterclaims against Jet Traders in C.A. 79–363. The Court will also continue the bond posted by Jet Traders, pursuant to the Court's November 5, 1979 order in C.A. No. 79–363 (D.I. 56) to secure the damages of Tekair and Ronair for wrongful attachment of the Boeing aircraft. (C.A. 79–363, D.I. 61.)

Ronair and Tekair have also requested that they be awarded costs, disbursements and attorneys' fees involved for this motion with leave to apply at an inquest and to recover out of the $90,000 attachment bond, any appropriate costs, disbursements, and attorneys' fees they have incurred incident to any claims asserted by or against Jet Traders in C.A. 79–363 and C.A. 81–120.

Because this Court has stated that it will examine affidavits from any party bearing expenses incurred as a result of Winfield's or Jet Traders' failure to comply promptly with discovery propounded to them (C.A. 79–363, D.I. 221 at 4), this Court will grant Ronair's and Tekair's request.

## 3. RULE 37 DISMISSAL OF WINFIELD'S CROSS–CLAIM

Ronair has moved for dismissal with

---

**40.** Although the language of the rule refers only to the authority of the clerk to enter a default, this has not been interpreted as a limitation upon the power of the court to enter a default itself. 10 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure*, § 2682 at 412 (2d ed. 1983).

prejudice of Winfield's cross-claim[41] against Ronair for: (1) failure to make or cooperate in discovery; (2) failure to prosecute the cross-claim; and (3) failure to comply with Court orders. (D.I. 249.)

Rule 37(b)(2), Fed.R.Civ.P., provides in pertinent part:

> If a party ... fails to obey an order to provide or permit discovery ... the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:
> ....
> (C) An order ... dismissing the action or proceeding or any part thereof ....

■ Like Rule 41(b), dismissal with prejudice pursuant to Fed.R.Civ.P. 37(b) is also a harsh sanction, to be resorted to only in extreme cases. *Harris v. Cuyler*, 664 F.2d 388, 390 (3d Cir.1981). The Court must also give full regard to the severity of the sanction, granting dismissal sparingly and only when less drastic sanctions have been explored. *Jones v. Smith*, 99 F.R.D. 4 (M.D.Pa.1983), *aff'd*, 734 F.2d 6 (3d Cir.1984) (citing *Ramsay v. Bailey*, 531 F.2d 706, 798 (5th Cir.1976), *cert. denied*, 429 U.S. 1107, 97 S.Ct. 1139, 51 L.Ed.2d 559 (1977). Additionally, this Court is required to "exercise some reasoned discretion with respect to the alternative sanctions."[42] *DiGregorio v. First Rediscount Corporation*, 506 F.2d 781, 789 (3d Cir.1974) (Gibbons, J., dissenting).

While dismissal with prejudice under Rule 37 is a severe sanction, it "must be available to the District Court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." *National Hockey League v. Metropolitan Hockey Club*, 427 U.S. 639, 642, 96 S.Ct. 2778, 2780, 49 L.Ed.2d 747 (1976). The sanction of dismissal "must be tempered by the careful exercise of judicial discretion to assure that its imposition is merited. However, where one party has acted in willful and deliberate disregard of reasonable and necessary court orders and the efficient administration of justice, the application of even so stringent a sanction is fully justified and should not be disturbed." *DiGregorio*, 506 F.2d at 788 (quoting *Trans World Airlines, Inc. v. Hughes*, 332 F.2d 602, 614 (2d Cir.1964)).

■ Dismissal cannot be imposed as mere punishment under Rule 37(b). *Harris*, 664 F.2d at 390; *DiGregorio*, 506 F.2d at 789. Nor can a court order an action dismissed for a party's failure to comply with a discovery order when such noncompliance is due to inability, and not willfulness, bad faith, or any fault of the petitioner. *Societe Internationale*, 357 U.S. at 212, 78 S.Ct. at 1095. However, dismissal is warranted when there is a clear record of delay or contumacious conduct by the plaintiff. *Donnelly*, 677 F.2d at 342. Before ordering dismissal, the court must find whether plaintiff engaged in conscious or intentional acts or omissions. *Harris*, 664 F.2d at 391.

---

**41.** In his answer to the first amended complaint of TAAG in C.A. 81–120 (D.I. 91), Winfield purports to cross-claim against Ronair to be indemnified by Ronair in the event Winfield is found personally liable to TAAG for any claims set forth in TAAG's complaint.

**42.** Rule 37(b)(2) provides four separate sanctions for the failure of a party to obey a court order to provide or permit discovery. These sanctions are:

(A) An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;

(B) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting him from introducing designated matters in evidence;

(C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party;

(D) In lieu of any of the foregoing orders or in addition thereto, an order treating as a contempt of court the failure to obey any orders except an order to submit to a physical or mental examination.

▮ In considering a Rule 37 sanction, the court is compelled to examine all pertinent circumstances of the case. *Donnelly*, 677 F.2d at 342; *Harris*, 664 F.2d at 390. Additionally, the court must keep in mind the sound social policy of deciding cases on their merits and against this policy, balance considerations of sound judicial administration and the need to deter parties from abusing the discovery process. *Davis v. Williams*, 588 F.2d 69 (4th Cir.1978). *See also National Hockey League*, 427 U.S. at 642, 96 S.Ct. at 2780.

▮ Other factors which must be balanced are the degree of the plaintiff's personal responsibility for the delay, the amount of prejudice the defendant suffers as the result of the delay, the extent of any history of proceeding in a dilatory manner, and the effectiveness of less severe sanctions. *Donnelly*, 677 F.2d at 342 (citing *Davis v. Williams*, 588 F.2d 69, 70 (4th Cir.1978)). Moreover, this Court must examine whether Winfield has done all that a reasonable man could do to comply with discovery orders under the circumstances. *Societe Internationale*, 357 U.S. at 201, 78 S.Ct. at 1090. Upon balancing these factors and considerations, the Court must articulate reasons for the sanction imposed. *Quality Prefabrication, Inc. v. Daniel J. Keating Co.*, 675 F.2d 77, 78 (3d Cir.1982).

▮ A careful review of the full record exposes Winfield's continued willful and contumacious conduct with respect to this Court's July 18, 1984 order. Winfield's willfulness, like Jet Traders', is also mirrored in the record in terms of the continuous shuffle of new attorneys, the inadequate responses to requests for admissions, the flagrant and unexplained refusal to answer interrogatories or produce documents pursuant to requests for production as well as his unilateral and unjustified failure to appear at the resumption of his deposition noticed jointly by Ronair, Tekair and TAAG. Even when the resumption of Winfield's deposition was twice postponed and rescheduled at his request, he did not appear. With the only exception being the production of some documents, Winfield has contumaciously, vexatiously and categorically refused to comply with this Court's July 18, 1984 order compelling discovery (C.A. 79–363, D.I. 221) and this Court has been extremely patient in its efforts to allow ample time to comply with its discovery orders.

The lynchpin of Winfield's cross-claim against Ronair is the refusal by Tekair and Ronair to tender delivery of the aircraft "in accordance with the agreement with Defendant Winfield ...." (D.I. 91, ¶ 116.) For Winfield to succeed on his cross-claim, he must prove that he personally contracted to purchase the aircraft from Ronair. After five and one-half years of discovery, Winfield has failed to produce any evidence of a contract for the sale of an aircraft between Winfield and Ronair.

It is also apparent from the record in this case, that Ronair and Tekair have and will continue to be prejudiced by Winfield's dilatory tactics. Financial records personal to Winfield and relevant to this case have been sought by Ronair and Tekair without success. In Broward County, Florida, there are at least thirty cases now pending in which either Winfield, one of his brothers or his business enterprises have engaged in tactics to resist discovery. (D.I. 191.) These tactics include: changing attorneys, avoiding process, refusal to produce documents, refusal to appear for a deposition, refusal to answer questions, delay or complete failure in production of documents. (*Id.*) In this litigation, some documents possibly relevant to the case were in the custody of the Circuit Court in Broward County, Florida, and now other documents are in the possession of the IRS in Florida. The greater the delay in this case, the greater the chance some relevant documents may never be found.

Finally, this Court must consider the effectiveness of less severe sanctions. Here the positive effect of a sanction other than dismissal is nonexistent. From its inception, this litigation has been fraught with delays and disobedience by Winfield of Court rules and orders. Winfield has been *personally* warned by this Court and yet

he has failed to heed these warnings. He has made bold-faced, unsupported allegations and he has adamantly refused to lend support to them by making proper discovery. There exists no sanction under Rule 37 which would serve to prevent further delay and harassment of the Court or Ronair or that would prompt or coerce Winfield into complying with the rules of court.

In the final analysis, this Court must weigh Winfield's interests in deciding this matter on the merits against the mandate for efficient and sound administration of justice. Although the Court would prefer to achieve determination of this dispute on the merits rather than on procedural defaults, this reasoning has its Plimsoll line and Winfield has reached that line. Failure of this Court to dismiss Winfield's cross-claim will leave Ronair shackled to a lawsuit in defense of a claim which Winfield refuses to advance by discovery. Because Winfield has chosen to ignore orders of this Court or to respond to document requests in Houdini-like fashion, this Court will dismiss with prejudice Winfield's cross-claim against Ronair in C.A. 81–120.

An order will be entered in accordance with this Opinion.