**574**

LITTON SYSTEMS, INC., et al., Plaintiffs,

v.

AMERICAN TELEPHONE AND TELEGRAPH COMPANY, et al., Defendants.

NEW YORK TELEPHONE COMPANY, et al., Counterclaimants,

v.

LITTON SYSTEMS, INC., et al., Counterdefendants.

LITTON SYSTEMS, INC., Plaintiff,

v.

SOUTHWESTERN BELL TELEPHONE COMPANY, Defendant.

Nos. 76 Civ. 2512 (WCC), 77 Civ. 3720 (WCC).

United States District Court, S. D. New York.

Sept. 28, 1981.

Howrey & Simon, Washington, D. C., for plaintiffs-counterdefendants; William Simon, John W. Nields, Jr., Washington, D. C., Peter E. Fleming, Jr., Curtis, Mallet-Prevost, Colt & Mosle, New York City, of counsel.

Dewey, Ballantine, Bushby, Palmer & Wood, New York City, for defendants-counterclaimants; Leonard Joseph, Harvey Kurzweil, J. Paul McGrath, Peter H. Jacoby, New York City, of counsel.

CONNER, District Judge:

In its Opinion and Order filed June 4, 1981 ("Opinion"), 90 FRD 410, with which familiarity is assumed, this Court, on *de novo* consideration, affirmed the Findings and Conclusions of Magistrate Kent Sinclair, Jr. that counsel for plaintiffs (collectively "Litton") had been guilty of gross negligence and intentional misrepresentation in responding to discovery requests and court orders for production of records of interviews conducted by Litton's house counsel Norman L. Roberts with various Litton employees relating to suspected financial improprieties in the operation of Litton. The Court indicated that the conduct of Litton's counsel warranted the imposition of substantial sanctions under Rule 37(b), F.R.Civ.P., but left for subsequent determination the nature of such sanctions. The Court thereafter authorized the filing by Litton's counsel of a belated request for reconsideration of the Court's decision and a memorandum concerning the sanctions to be imposed; counsel for defendants filed opposing memoranda. This Opinion incorporates the Court's supplemental findings and conclusions thereon pursuant to Rule 52(a), F.R.Civ.P.

## REQUEST FOR RECONSIDERATION

Litton attacks several of the Court's findings on the basis that their trial counsel, Howrey and Simon, were justified in relying on representations by Litton's house counsel, Roberts and Theodore Craver, that Litton had no records of the Roberts investigation except for the notes of his interviews with the five persons indicted in connection with the bribery of an official of San Mateo Community College. Even if true, this does not excuse the gross negligence of Litton's house counsel in making such representations without checking the file, which was readily available to them, and which contained Roberts' handwritten notes of his interviews with five other Litton employees relating to suspected "skimming" and improper payment of "finders' fees." Indeed, it is difficult to credit the statements of Roberts and Craver that they had forgotten these interviews concerning a matter which was so extraordinary and so significant. Obviously Litton must be held to account for the conduct of its house counsel no less than for that of its trial counsel.

Moreover, Litton's trial counsel cannot escape responsibility for their own failure to correct their repeated misstatements concerning the existence of the documents after they had received the entire Roberts investigation file and had learned that it contained notes of the additional interviews. It was even more reprehensible for them to furnish copies of Roberts' handwritten notes of his interviews with the San Mateo indictees, without the intervening pages containing notes of the other interviews, and for them to state, when asked about the gaps in numbering of the pages, that the missing pages concerned "matters wholly extraneous to the case."

Litton now concedes that this statement "was erroneous and cannot be justified." Despite that concession, Litton persists in asserting that there was no intention to conceal these documents and asks the Court to make a specific finding to that effect. The Court has found just the contrary and has been given no reason to retreat from that finding.

Litton argues that its counsel were guilty only of excusable inadvertence, resulting from the "mass of discovery issues," the consequent confusion as to whether production of the documents was required by orders of the Court and their failure to "focus" on their prior representations as to the non-existence of the documents. That ex-

planation is wholly unconvincing in view of the repeated discussion of the existence of these particular documents, and the improbability that, merely by coincidence, the Roberts notes were produced with precisely these pages missing from the numbered sequence.

## SANCTIONS

Defendants contend that the conduct of Litton's counsel warrants imposition of the severest possible sanction: dismissal of the action. Litton contends for the opposite extreme, arguing that the notoriety resulting from the Court's Opinion has already caused their trial counsel and particularly O'Brien, such public humiliation and mental anguish that any further punishment would be excessive and unnecessary for either specific or general deterrence. The Court cannot endorse either of these antipodal positions.

### Legal considerations

■ Our adversarial system of civil justice rests upon access of all parties to all evidence bearing on the controversy between them, including that in the control of adverse parties. This, of course, requires the absolute honesty of each party in answering discovery requests and complying with discovery orders. Destruction or concealment by a party of relevant documents in its files threatens the viability and public acceptance of the system. Attorneys are thus deemed officers of the court; they operate on an honor system; those who violate the trust reposed in them must be appropriately disciplined to provide both specific and general deterrence of such conduct. *Roadway Express Inc. v. Piper*, 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980); *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1979).

Rule 37(b), F.R.Civ.P. implements this policy by expressly empowering the Court in which an action is pending to impose any of a wide range of specified sanctions for failure of a party to obey a court order to provide discovery. The list of sanctions recited in the rule is not intended as exhaus-

tive but merely as illustrative; the choice of appropriate sanctions is committed to the sound discretion of the Court.

Defendants cite a number of decisions in which the extreme sanction of dismissal was ordered to discipline a plaintiff for failure to comply with discovery orders. However, in each of those decisions, the plaintiff had repeatedly defied express court orders. See, *e. g.*, *National Hockey League v. Metropolitan Hockey Club, Inc.*, supra, 427 U.S. at 640, 96 S.Ct. at 2779 (refusal for 17 months to answer "crucial" interrogatories); *Chira v. Lockheed Aircraft Corp.*, 634 F.2d 664, 666 (2d Cir. 1980) (doing "absolutely nothing at all" to comply with court orders to pursue discovery and prepare case for trial); *Cine Forty-Second Street Theater Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062 (2d Cir. 1979) (refusal for 3 years to comply with specific court orders to answer interrogatories on damages); *Independent Investor Protective League v. Touche Ross & Co.*, 25 F.R. Serv.2d 222 (2d Cir. 1978) (failure for many months to comply with repeated court orders to answer critical interrogatories).

■ Dismissal constitutes a denial of access to justice; if the disciplined party had a valid claim, dismissal results in injustice to that party and a windfall to its adversary. It therefore should be resorted to only to the minimum extent necessary to induce future compliance and preserve the integrity of the system. *Independent Prod. Corp. v. Loew's*, 283 F.2d 730, 733 (2d Cir. 1960); *Syracuse Broadcasting Corp. v. Newhouse*, 271 F.2d 910, 914 (2d Cir. 1959) (subsequent history omitted); *Gill v. Stolow*, 240 F.2d 669, 670 (2d Cir. 1957).

■ Among the factors to be considered in determining what sanction is appropriate for a willful failure to make discovery are the importance of the information sought; the offending party's record of cooperation in other respects; whether and in what circumstances it ultimately produced the information; the extent of prejudice occasioned by the delay in its production; and public policy aspects of the litigation.

## Importance of the documents

The notes of Roberts' interviews with Litton employees relating to suspected employee fraud and embezzlement were clearly relevant to one of defendants' principal contentions: that Litton's financial losses were due to mismanagement rather than to defendants' alleged antitrust violations. It is not significant that the notes themselves were ultimately ruled inadmissible on the ground that they were hearsay.[1] Without doubt, they were "reasonably calculated to lead to the discovery of admissible evidence." Rule 26(b)(1), F.R.Civ.P. With access to the notes, defendants would be in a position to take the depositions of those interviewed by Roberts or other persons identified by them, or to pursue production of documentary records relating to the incidents reported, and this other evidence would have been admissible.

## Litton's conduct in other respects

In a case where so much is at stake, feelings often run high and counsel not infrequently cooperate as little as the discovery rules and the court's orders permit. Despite the seemingly inevitable frictions which are generated between opposing counsel, the discovery conduct on both sides in this case has been generally good.

Litton produced over 3½ million pages of documents, all of which presumably had to be screened for relevance and privilege. Litton reports that it employed twenty attorneys and thirty legal assistants in the discovery effort.

Much of the massive task was accomplished without Court intervention. Litton produced copious records relating to the defense of alleged mismanagement, some of which were equally or even more damaging to Litton's cause than the few which were improperly withheld.

## Public policy

 Every private antitrust action is imbued with a public interest in enforcement of the antitrust laws. Dismissal of such an action for the purpose of disciplining the plaintiff adversely affects not only that plaintiff but the public interest. See *In re Professional Hockey Antitrust Litigation*, 63 F.R.D. 641, 642 (E.D.Pa.1974), aff'd sub nom. *National Hockey League v. Metropolitan, supra*, 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976).

Dismissal is therefore a remedy that should be deployed only in rare circumstances. *Cine Forty-Second Street, supra*, 602 F.2d at 1064.

## Ultimate production

The documents were finally produced in November 1980, approximately two months before the trial was scheduled to begin. Defendants urge that the documents were produced only because Litton's counsel learned that defendants' counsel were about to obtain them from the District Attorney of San Mateo County. But it appears that Litton turned over to the District Attorney's office only the records of Roberts' interviews with the principals involved in

---

1. Defendants state that the documents were excluded "initially on the basis that they were hearsay, Tr. at 975; subsequently on the grounds that the statements therein were intended only for Litton's internal consumption, Tr. at 13911–12; and still later on the basis that the employees interviewed by Roberts had a motive to misrepresent, Tr. at 15626." Any reasonable reading of the portions of the trial transcript cited by defendants belies their suggestion that the Court kept shifting the grounds for its exclusion ruling. At Tr. 975, the Court stated unequivocally that the notes were being excluded as hearsay.

At Tr. 1391 1, when the Court again stated, "I don't know why they would be admissible," defendants' counsel argued that "certain of them would be admissible as admissions under

801(d)(2)." The Court responded, in part, ". . . it seems to me you are trying to stretch the intention of that admissions exception beyond its logical applicability." The "exception" referred to is, of course, an exception to the hearsay rule.

At Tr. 15625, when defendants' counsel stated, ". . . tomorrow we propose to offer the so-called Roberts notes," the Court asked, "Why wouldn't they be hearsay?" After counsel again urged the admissions exception, the Court stated again, "No, I am going to rule out the Roberts notes. I think they are hearsay. I don't think that exception applies to this kind of an inquiry, where someone who is asked questions by counsel may have his own reasons for coloring his statements. He may want to make his own performance look better."

the San Mateo Community College bribery which that office was then investigating and not Roberts' notes of interviews with other Litton employees relating to financial improprieties affecting only Litton itself.

Thus it appears that, after repeated denials of the existence of the latter documents, Litton's counsel decided, on their own initiative, to comply with the court order and produce them rather than continuing to conceal them. Their decision was a substantial step in the direction of righting, though not purging, the previous wrong.

*Prejudice to defendants*

Although the documents were not produced until long after the discovery period had ended, the Court, in order to minimize the prejudice to defendants, reopened discovery, limited to the subject of the additional Roberts interviews. In addition, although approximately two months remained before the time set for trial, the Court indicated that if defendants found it impractical to complete the necessary additional discovery within that period, the Court would postpone the start of the trial for a period of up to two weeks. As matters turned out, defendants' counsel took advantage of this opportunity, requesting a one-week postponement, which the Court granted.

Defendants noticed depositions of 34 persons during the reopened discovery period, but deposed only ten of them, unaccountably not including any of the five non-indictees whose interviews by Roberts were recorded in the notes which were belatedly produced.

Thus, insofar as concerns the eventual outcome of the case, it appears that defendants were not prejudiced to any significant extent. At worst, they were required to travel again to the West Coast for depositions, and perhaps to depose again some witnesses who had previously been deposed. The necessity of reopening discovery also may have inconvenienced the final trial preparations of defendants' counsel, but this was a disadvantage which fell equally on Litton's counsel who also participated in the additional discovery.

*Conclusion*

The jury returned a verdict in favor of Litton which, after trebling, amounts to slightly less than $277 million. In addition, Litton would ordinarily be entitled by statute to an award of its reasonable costs and attorneys' fees, which presumably would run well into the eight-figure range.

Dismissal of the action, which defendants urge, would represent punishment of Litton far beyond any extent justified in light of the circumstances discussed above, as inexcusable as the conduct of Litton's counsel was. Although the courts have not hesitated to penalize clients for the misfeasance of their attorneys, this Court is disposed to agree with the sentiments expressed by Judge Oakes in his concurring opinion in *Cine Forty-Second Street, supra,* 602 F.2d at 1069:

> "It would be with the greatest reluctance, however, that I would visit upon the client the sins of counsel, absent client's knowledge, condonation, compliance or causation."

Where, as here, the documents withheld were important but not critical, and were ultimately produced by the defaulting party on its own initiative and without substantial prejudice to the opponent resulting from the delay, a less stringent penalty is appropriate.

After full consideration, the Court concludes that depriving Litton of all costs and attorneys' fees to which it would otherwise be entitled is a sufficient punishment to deter such conduct in the future, by Litton's counsel or by others, and it is SO ORDERED.